## Case No. 17,311.
### WEAVER v. THOMSON.
[1 Wall. Jr. 343.] [1]
Circuit Court, E. D. Pennsylvania. Oct. 5, 1849.

ADMIRALTY—APPEALS—AMENDMENT OF LIBEL.

An appellee in admiralty may amend in this court the libel he has filed in the district court, so as to make a claim here for damages above costs, caused by a vexatious appeal.

[Cited in The Charles Morgan v. Kouns, 5 Sup. Ct. 1175, 115 U. S. 76.]

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

The district court having given a decree in admiralty, [case unreported,] the libellee, who had been cast, appealed to this court. The libellant below—the appellee here—now setting forth that the appeal was for delay merely, and vexatious, and that he had been greatly injured by the mere fact of the delay, Mr. Vandyke asked leave to amend the libel originally filed in the district court, so as to make a further claim for damages, above costs, thus caused by appellant's act.

GRIER, Circuit Justice. I have repeatedly expressed my design of discouraging appeals unless there was some substantial grounds for them in a manifest error in the decree of the court below. In questions particularly of mere fact, and in those, like salvage, depending on sound discretion, I discourage them because they lead to speculations on the temperaments and dispositions of the respective judges, and are taken on a little besides a calculation of chances. Where the want of ground for the appeal is so obvious as to shew that the case must have been carried up here for delay merely, I see no objection to allowing a party to recover damages for any injury done by the delay to which he has thus put his opponent in a vexatious and unreasonable way. Amendment allowed.

---

## Case No. 17,312.
### WEAVER v. WALTON.
[The case cited under above title in 1 Flip. 441, 5 Chi. Leg. News. 125. and 6 Alb. Law J. 422, is the same as Case No. 5,488.]

WEAVER (WARREN v.). See Case No. 17,203.

---

## Case No. 17,313.
### In re WEBB et al.
[2 N. B. R. G14 (Quarto, 183); [2] 2 Am. Law T. Rep. Bankr. 57; 9 Int. Rev. Rec. 169; 16 Pittsb. Leg. J. 43.]

District Court, S. D. Ohio. May, 1869.

BANKRUPTCY OF PARTNERSHIP—PRIORITY OF UNITED STATES—REVENUE BOND SIGNED BY INDIVIDUAL PARTNERS.

Where individual members of a co-partnership signed internal revenue tobacconist's bonds as

---

[1] [Reported by John William Wallace. Esq.]
[2] [Reprinted from 2 N. B. R. G14 (Quarto, 183), by permission.]

accommodation sureties, and the firm subsequently being adjudged bankrupt, the collector of internal revenue holding the bonds, the conditions of which had been broken, proved the debts thereon in bankruptcy, and claimed payment out of the partnership assets by priority of distribution to the United States. *Held*, that the debts were individual debts, and the claim of the United States to prior payment out of partnership assets was not valid, but it would be good against individual assets.

In this case, the register, Flamen Ball, Esq., made the following report:

In pursuance of an order of reference, to me directed and issued by the court on the petition of Drausin Wulsin, Esq., assignee of said bankrupts, in the matter of the claim of Leonard A. Harris, collector of internal revenue of the United States, for the First district of Ohio, after notifying said collector, I sat at my office in Cincinnati, on the 22d day of March, and on the 1st day of April, 1869, to hear such testimony as might be produced by either party in reference to the claim of the United States against said bankrupts, filed in this cause; and having heard all the testimony offered by said parties, I do now herewith return the same, with a statement of the material facts proved, and the points of law arising thereon. On the 20th day of February, 1868, the said collector made and filed in this court proof of a claim in favor of the United States, and against the firm of William A. Webb & Co., amounting in all to the sum of nine thousand and seven dollars and fifty cents. As to the sum of seven dollars and fifty cents, part of said claim, there is no dispute; but the question at issue relates to the liability of the firm upon the two bonds, copies of which are exhibited with said evidence. These bonds were the ordinary bonds given to the collector by manufacturers of tobacco, and are designated as "Tobacconist's Bonds." The first was executed May 14th, 1867, by Robert Walter as principal, and William A. Webb and Gilbert M. Johnson as sureties, conditioned to pay the sum of five thousand dollars in case of default, and the second bond was executed by Samuel Lottier and Samuel R. Wade as principals, and by Mr. Webb and Mr. Johnson as sureties, conditioned to pay the sum of four thousand dollars in case of a similar default. The condition of each bond has been broken by the principals, and the United States, through their collector, claims the whole amount of both bonds as a preferred claim out of the assets of the late firm of William A. Webb & Co., now in the hands of the assignee. The assignee claims that the obligation of each bond is the obligation of the parties subscribing the same as individuals, and that the same are not the obligations of the firm, and that the partnership debts must be first paid out of the partnership assets. There is no proof showing that either of these obligations was incurred by the partnership. but, on the contrary, the evidence shows that the firm de-

rived no benefit or advantage, as consideration for signing the same, but that they were merely accommodation sureties. Lottier & Wade were the principals in one bond, Robert Walter was the principal in the other.

It is conceded that if any assets should be realized from the separate estates of the sureties, those assets should be applied to the payment of this debt in preference to the individual creditors of the respective bankrupts; so, also, it is conceded that if a surplus of the partnership assets should remain after the payment of the partnership debts, such surplus should be so applied. The principle of law applicable to this case, in my opinion, is, that partnership assets must be first applied to the debts of the partnership; and that as this debt is not a debt of the partnership, but simply a debt of the individual partners, the claim of the United States must be postponed until all the debts of the partnership shall be paid from the assets of the partnership. This principle of law is sustained by the decisions of all courts everywhere, and it is fully recognized by the thirty-sixth section of the bankrupt law [of 1867 (14 Stat. 534)], which provides, inter alia, as follows: "And after deducting out of the whole amount received by such assignee, the whole of the expenses and disbursements, the net proceeds of the joint stock shall be appropriated to pay the creditors of the co-partnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors." The partnership property is a fund appropriated by law to the payment of the partnership debts, and, as the liability of the several partners on the bonds now under consideration is binding upon them as individuals, and not on them as partners in a firm, I am clearly of the opinion that the claim asserted by the collector to priority in the distribution cannot be sustained.

LEAVITT, District Judge. The opinion of the register on the question stated by him is affirmed, and the assignee of the bankrupts is directed to allow and adjust the claims against the sureties in the bonds described in favor of the United States, on the basis that the claims against said sureties are against them in their individual capacities, and not as members of said firm.

## Case No. 17,314.

In re WEBB et al.

[3 N. B. R. 720 (Quarto, 177);[1] 2 Chi. Leg. News, 313.]

District Court, S. D. New York. May 10, 1870.

BANKRUPTCY—DISCHARGE.

To entitle a bankrupt to discharge, the proceeds of his property to be divided among his

[1] [Reprinted from 3 N. B. R. 720 (Quarto, 177), by permission.]

creditors must be equal to fifty per cent. at the time of the hearing of the application for the discharge before the register.

[Cited in Re Kahley, Case No. 7,594; Re Van Riper, Id. 16,874; Re Vinton, Id. 16,951; Re Waggoner, 5 Fed. 917.]

Application of the bankrupts [Charles C. Webb and Thomas H. Taylor] for final discharge.

BLATCHFORD, District Judge. The proceeds of the bankrupts' property in the hands of their assignee, subject to be divided among their creditors, must, at the time of the hearing of the application for their discharge before the register, be then equal to fifty per centum of the amount of the claims proved against their estate, on which they are liable as principal debtors, in order to entitle them to discharge, unless the assent named in section 33 [of the act of 1867 (14 Stat. 533)] is filed. I concur with the view taken in Re Freiderick [Case No. 5,092].

## Case No. 17,315.

In re WEBB et al.

[6 N. B. R. 302.][1]

District Court, D. Kentucky. 1872.

BANKRUPTCY — ASSIGNEE'S LIABILITY FOR RENT.

A landlord's right to rent, against the bankrupt's estate, expires on the day of adjudication. If the assignee occupy the premises after that day, he, and not the estate, is liable for the rent; when, however, his occupancy is for the benefit of the estate, he will be credited by the rent he is obliged to pay.

[Cited in Bailey v. Loeb, Case No. 739; Re Hufnagel, Id. 6,837.]
[Cited in Deane v. Caldwell, 127 Mass. 244; Abbott v. Stearns, 139 Mass. 170, 29 N. E. 379.]

The bankrupt held a lease from Gustavus Schurman's estate, now in the hands of Robert Cochran, as receiver, by order of the Louisville chancery court, at an annual rental of two thousand seven hundred dollars, which lease expires on the first day of July, eighteen hundred and seventy-two. J. C. Webb & Co. were forced into bankruptcy on the ninth day of October, eighteen hundred and seventy-one, and the assignee took possession of the leased premises, and held the same up to January thirteenth, eighteen hundred and seventy-two, for the purpose of selling off the stock on hand, at which time the assignee paid all rent to January thirteenth, eighteen hundred and seventy-two, and offered to surrender the premises to the landlord, which surrender the landlord accepted, with the express understanding that he claimed the rent for the full term of the lease up to July first, eighteen hundred and seventy-two. The landlord afterwards rented the premises to another tenant at four hundred and fifty-two dollars and fifty cents less than J. C. Webb & Co. had agreed to pay to July first, eighteen hundred and seventy-two. The

[1] [Reprinted by permission.]